IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| AUDUBON SOCIETY OF PORTLAND, an Oregon non-profit Corporation; OREGON WILD, an Oregon non-profit corporation; and WATERWATCH OF OREGON, an Oregon non-profit corporation, | Case No. 1:17-cv-00069-CL (lead)<br>Case No. 1:17-cv-00098-CL (trailing)<br>Case No. 1:17-cv-00468-CL (trailing)<br>Case No. 1:17-cv-00531-CL (trailing) |

    Plaintiffs,
 v.               OPINION & ORDER

RYAN ZINKE, in his
official capacity as Secretary of
the Interior; GREG SHEEHAN, in his
official capacity as Acting Director of the
U.S. Fish and Wildlife Service; and
UNITED STATES FISH AND
WILDLIFE SERVICE, a federal
agency of the U.S. Department of
the Interior,

    Defendants,

TULELAKE IRRIGATION DISTRICT;
KLAMATH WATER USERS
ASSOCIATION; TULELAKE
GROWERS ASSOCIATION;
TALLY HO FARMS
PARTNERSHIP dba WALKER
BROTHERS; FOUR H ORGANICS,
LLC; and WOODHOUSE FARMING
AND SEED COMPANY,

    Intervenor-Defendants.

Page 1 – OPINION & ORDER

CLARKE, Magistrate Judge.

Audubon Society of Portland, Oregon Wild, and WaterWatch of Oregon (collectively, Audubon) move to compel completion of the administrative record or, in the alternative, to compel supplementation of the administrative record (#58). Tulelake Irrigation District, Klamath Water Users Association, Tulelake Growers Association, Tally Ho Farms Partnership, Four H Organics, LLC, Woodhouse Farming and Seed Company, and Michael Byrne (collectively, TID) separately move to compel completion of the administrative record or, in the alternative, to compel supplementation of the administrative record (#60). For the reasons below, both motions are denied.

## BACKGROUND

Audubon originally filed this action on January 17, 2017. Audubon challenges the Record of Decision, Final Comprehensive Conservation Plan, and Final Environmental Impact Statement (collectively, the "Plan") prepared by the Secretary of the Interior and the U.S. Fish and Wildlife Service ("FWS") (collectively, "Federal Defendants"). TID subsequently, and successfully, moved to intervene in this and two sister suits and also filed its own action against Federal Defendants on April 3, 2017, in which they also challenge the Plan prepared by Federal Defendants. Audubon moved for, and was granted, intervention in TID's separately filed lawsuit. On April 17, 2017, the four cases were consolidated.

Audubon and TID contend, *inter alia*, that Federal Defendants misinterpreted the Kuchel Act, a federal statutory scheme that seeks to manage Lower Klamath, Upper Klamath, Tule Lake, and Clear Lake National Wildlife Refuges. The act seeks "to preserve intact the necessary existing habitat for migratory waterfowl," while at the same time considering "optimum

agricultural use that is consistent" with "the major purpose of waterfowl management[.]" 16 U.S.C. §§ 695*k-l*.

On May 31, 2017, Federal Defendants first lodged the administrative record. The parties subsequently worked privately to address Audubon's and TID's concerns regarding the administrative record's completeness. This led Federal Defendants to file a Corrected Administrative Record on September 11, 2017. Nevertheless, both Audubon and TID continue to maintain that the administrative record as it currently stands is insufficient and must be completed or supplemented.

## I.  Audubon's Motion

Audubon seeks four Solicitor's Opinions from the years 1976, 1987, 1994, and 1997 "discussing [both] the United States Department of the Interior's interpretation of the Kuchel Act at various points in history" and the Secretary of the Interior's and FWS's legal obligations under the Kuchel Act. Audubon's Mot. to Compel, at 3, 11. In June 2016, while the public comment process for the draft version of the Plan was ongoing, Audubon attempted to obtain these opinions, as well as an opinion from 1995, through the Freedom of Information Act ("FOIA") in an attempt to include the opinions in the administrative record. Audubon received the 1995 opinion from a third party but did not receive the other four opinions before the public comment period closed.

Despite not being in possession of the four Solicitor's Opinions, Audubon, in public comments to the draft version of the Plan, did discuss the opinions' relevance, mentioned the outstanding FOIA request, and asked that Federal Defendants "include those referenced Solicitor's Opinions in the record for the Final Plan." Audubon's Mot. to Compel, at 5 (citing

AR 002519-002525). Federal Defendants included the 1995 Solicitor's Opinion in a list of references for the Plan but did not include the 1976, 1987, 1994, and 1997 opinions.

On November 17, 2017, after this motion was fully briefed, Audubon received the four opinions. While Federal Defendants turned over the opinions pursuant to Audubon's FOIA request, Federal Defendants maintain that the opinions are not part of the record and should not supplement the record.

By contrast, Audubon contends that this Court should compel Federal Defendants to include the 1976, 1987, 1994, and 1997 opinions in the record because the documents undeniably exist and "were—at a minimum—before the agency and indirectly considered by the agency in developing its interpretation of the Kuchel Act," rendering them part of the administrative record. Audubon's Mot. to Compel, at 11. Alternatively, Audubon argues the Court should order Federal Defendants to supplement the record with the four opinions because the opinions are required in order to determine whether Federal Defendants considered all relevant factors and properly explained its interpretation of the Kuchel Act. As stated, Federal Defendants object, arguing Audubon has not carried its burden in showing (1) that the relevant decision-makers directly or indirectly considered the four opinions, and (2) that the record is not currently sufficient to provide for meaningful review.

## II. TID's Motion

TID seeks the inclusion of an April 30, 1956, memorandum from the Commissioner of Reclamation to the Secretary of the Interior. Prior to enactment of the Kuchel Act, Oregon and California ceded the land at issue to the Federal Government pursuant to two 1905 cession acts, one enacted by the Oregon legislature and one by the California legislature. TID asserts that the memorandum includes agency interpretation regarding the effect of the two cession acts, and

"[i]t is not apparent . . . that this relevant legal issue was considered in the final [Plan]." TID's Reply, at 3. Moreover, TID argues, the memorandum "also presents the agency perspective supportive of homesteading the lease lands, further informing the federal intent underlying the Kuchel Act," and, "[o]nce again, it is not apparent that this perspective was considered in the final [Plan]." TID's Reply, at 3. Because this memorandum includes factors that should have been considered by the relevant decision-makers in developing their interpretation of the Kuchel Act, TID asks that the Court order Federal Defendants to add the memorandum to the record or produce the memorandum for record supplementation. Federal Defendants object, maintaining (1) the document was never considered by relevant decision-makers and was not required to be considered, and (2) TID has not shown the record as it currently stands is insufficient for judicial review.[1]

## STANDARD

When reviewing agency action under the Administrative Procedure Act ("APA"), the court "will reverse the agency action only if the action is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law." *Lands Council v. Powell*, 395 F.3d 1019, 1026 (9th Cir. 2005) (citing 5 U.S.C. § 706(2)). An action is arbitrary and capricious if

> the agency fails to consider an important aspect of a problem, if the agency offers an explanation for the decision that is contrary to the evidence, if the agency's decision is so implausible that it could not be ascribed to a difference in view or be the product of agency expertise, or if the agency's decision is contrary to the governing law.

*Id.* (internal citation omitted). "Although [the court's] inquiry must be thorough, the standard of review is highly deferential; the agency's decision is 'entitled to a presumption of regularity,'

---

[1] TID also requested that Federal Defendants correct pagination and other ministerial errors in the administrative record, to lodge orderly and intact copies of all primary documents, to add five documents to the record that were considered by Federal Defendants, and to clarify which documents encompass the administrative record. Federal Defendants have agreed to these requests. Accordingly, the Court dispenses with a discussion of them.

Page 5 – OPINION & ORDER

and [the court] may not substitute [its] judgment for that of the agency." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415-16 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

In considering a challenge, "courts reviewing an agency decision are [generally] limited to the administrative record." *Lands Council*, 395 F.3d at 1029 (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985)). They must, however, "review the whole [administrative] record or those parts . . . cited by a party." 5 U.S.C. § 706. "'The 'whole' administrative record . . . consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citing *Exxon Corp. v. U.S. Dep't of Energy*, 91 F.R.D. 26, 33 (N.D. Tex. 1981)) (emphasis in original).

"An agency's designation and certification of the administrative record is treated like other established administrative procedures, and thus entitled to a presumption of administrative regularity." *McCrary v. Gutierrez*, 495 F. Supp. 2d. 1038, 1041 (N.D. Cal. 2007) (internal citation omitted). Hence, "[i]n the absence of clear evidence to the contrary, courts presume that [public officers] have properly discharged their official duties." *Id.* (internal citation and quotation omitted) (alteration in original).

In certain limited circumstances, however, the court may supplement the administrative record if (1) the admission of additional evidence is necessary to determine "whether the agency has considered all relevant factors and has explained its decision"; (2) if "the agency has relied on documents not in the record"; (3) "when supplementing the record is necessary to explain technical terms or complex subject matter"; or (4) "when plaintiffs make a showing of agency

bad faith." *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (internal citation and quotation omitted). "These limited exceptions operate to identify and plug holes in the administrative record" and "are narrowly construed and applied" so as to ensure "the exception does not undermine the general rule." *Lands Council*, 395 F.3d at 1030 (internal citation omitted).

## DISCUSSION

### I. Audubon's motion

As discussed, Audubon moves to compel production of four Solicitor's Opinions from 1976, 1987, 1994, and 1997. The opinions purportedly discuss the Interior Department's interpretation of the Kuchel Act at those points in history, as well as the Secretary of the Interior's and FWS's legal obligations under the Kuchel Act. Audubon asserts the opinions were before the decision-makers and, at the very least, were indirectly considered in developing the Plan at issue in this case. In the alternative, Audubon argues the four opinions should supplement the record because they are necessary to determine whether all relevant factors were considered and properly explained.

#### A. Whether the record is complete

To overcome the presumption that public officers have properly discharged their duties and that the administrative record is therefore complete, a plaintiff must (1) "identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record," *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006) (internal citation omitted), and (2) "identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents . . . that are likely to exist." *California v. U.S. Dep't of Labor*, No.

2:13-cv-02069-KJM-DAD, 2014 WL 1665290, at *5 (E.D. Cal. Apr. 24, 2014) (internal citation and quotation omitted).

Here, there appears to be no dispute, nor can there be, that Audubon has sufficiently identified the materials allegedly omitted from the record; indeed, Audubon identifies each Solicitor's Opinion it seeks, the author, the year they were published, and has provided the documents to the Court. Accordingly, the only issue is whether Audubon has provided reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record. To this end, Audubon argues that it explicitly referenced the Solicitor's Opinions in its public comments to the draft Plan and specifically requested that the decision-makers include the opinions in the administrative record of the final draft of the Plan. Further, they argue that Federal Defendants read and responded to these comments and included the 1995 Opinion in the record, and "Audubon is unaware of any legitimate reason the Service could have for selectively reviewing and locating only some relevant Solicitor's Opinions and excluding others." Audubon's Mot. to Compel, at 13. Audubon maintains this shows the opinions were before the relevant decision-makers and, at the very least, indirectly considered.

The Court disagrees. Audubon's argument is akin to that made by the plaintiff in *In re Delta Smelt Consol. Cases*, No. 1:09-CV-1053 OWW DLB, 2010 WL 2520946, at *3-*4 (E.D. Cal. Jun. 21, 2010). There, much like here, the plaintiffs referenced a number of reports and articles referenced in a comment letter submitted to the federal defendants. *Id.* at *3. The letter was included in the administrative record, and some of the cited references were included, but a number of others were omitted. *Id.* The plaintiffs argued that, because the omitted documents were referenced in the comment letter, they were before the agency during the decision-making

process and "*any* document placed before the agency prior to the issuance of [the decision] must be included in the [administrative record]." *Id.* at *3-*4 (alteration in original). The court determined that "[t]his [was] not the law," instead holding that simply referencing documents in a comment letter but not attaching them thereto was insufficient to demonstrate that relevant decision-makers directly or indirectly considered the documents requested. *Id.* at *4.

This same conclusion was reached in *Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111 (D.D.C. 2009). There, the plaintiffs alleged that a biological opinion ("BiOp") was before the agency and should be included in the record. *Id.* at 113. "Neither party," the court explained, "contest[ed] that the BiOp was a document that was substantially relied on by the" agency in reaching its interim decision. *Id.* The agency argued, however, that it did not have the BiOp before it when reaching its final decision. *Id.* The court sided with the agency, noting that the fact the BiOp was "heavily relied upon" for the interim decision does not alone "mean it was actually before the agency when it made its current decision." *Id.* at 114. Importantly, in addressing the fact that public comments during the decision-making process mentioned the BiOp, the court stated that "the fact that some comments received during the critical habitat designation process mentioned the BiOp, does not mean that the BiOP itself was considered by [the agency]." *Id.* The court thus found that the plaintiffs failed to overcome the strong presumption that the administrative record was properly designated. *Id.*

The same is true here. The mere fact that the 1976, 1987, 1994, and 1997 Solicitor's Opinions were cited in the comments of the draft Plan does not mean the opinions themselves were considered, directly or indirectly, in the final decision-making process. Audubon's contention that any document cited in comments is necessarily indirectly considered by an

agency is "an unworkable rule, as it would permit a party to force into the record any number of references, regardless of relevance, simply by attaching to a comment letter a list of references on a particular subject." *Delta Smelt*, 2010 WL 2520946, at *4. And it matters not that Audubon could not attach the opinions because it had not yet received them pursuant to its FOIA request. As the courts above lay out, the administrative record is strictly limited to those documents that were in fact in front of the agency during the decision-making process, not merely referenced in a comment. And, here, the fact remains that, regardless of why, the opinions were not "placed before the agency prior to the issuance of [the decision]."[2] *Id.* at *3-*4 (alteration in original).

The fact that Federal Defendants cited to the 1995 opinion in the final Plan and included that opinion in the record while excluding the others also fails to change the calculus. Audubon's speculation that there could be no legitimate reason for selectively reviewing and locating only one relevant Solicitor's Opinions while excluding others is not sufficient to overcome the strong presumption that Federal Defendants properly designated the administrative record. A potential lack of access to the 1976, 1987, 1994, and 1997 opinions during the decision-making process could, for instance, be a reason for reviewing and locating only one relevant Solicitor's Opinions while excluding others. Regardless of the actual reason, however, the parties, and the Court, are simply left speculating about Federal Defendants' decision to include only the 1995 opinion, whereas "reasonable, *non-speculative* grounds" are necessary for Audubon to successfully overcome the strong presumption that the administrative record was properly designated. As such, Audubon's request to compel Federal Defendants to include the Solicitor's Opinions in the administrative record is denied.

---

[2]Audubon may argue that this ruling could potentially allow agencies to ignore public records requests in an effort to preclude certain documents from being included in the administrative record. Such an outcome would, however, run afoul of FOIA requirements. *Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982) (stating that Congress did not intend for any agency "to use the FOIA offensively to hinder the release of non-exempt documents" and that "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA").

### B. Whether to supplement the record

The next issue is whether, as Audubon contends, the four opinions should supplement the record because they are necessary to determine whether all relevant factors were considered and properly explained. As discussed, judicial review of an agency action under the APA is generally confined to the administrative record—*i.e.*, those documents that were before the administrative decision-makers. *Citizens to Preserve Overton Park*, 401 U.S. at 420, *abrogated on other grounds by Califano*, 430 U.S. at 105. Nevertheless, a court may supplement the record if the plaintiff is able to sufficiently show that the admission of additional evidence is necessary to determine "whether the agency has considered all relevant factors and has explained its decision." *Sw. Ctr.*, 100 F.3d at 1450 (internal citation and quotation omitted). This is colloquially referred to as the "relevant factors" exception. *Pinnacle Armor, Inc. v. United States*, 923 F. Supp. 2d. 1226, 1233-34 (E.D. Cal. 2013).

Audubon claims the Solicitor's Opinions explain the Department of the Interior's interpretation of the Kuchel Act over time. And, because "'[t]he consistency of an agency's interpretation over time is a factor in determining the level of deference due,'" Audubon insists that the four opinions "are directly relevant to the determination of whether" Federal Defendants considered, properly explained, and consistently interpreted the Kuchel Act. Audubon's Mot. to Compel, at 14 (quoting *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 887 (11th Cir. 2003)). In response, Federal Defendants argue Audubon has not demonstrated that the existing record is insufficient for judicial review.

"[T]he consistency of an agency's position is a factor in assessing the weight that position is due." *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993). Thus, "[a]n agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is

'entitled to considerably less deference' than a consistently held agency view." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n. 30 (1987) (quoting *Watt v. Alaska*, 451 U.S. 259, 273 (1981)). The amount of weight to be given to an agency's views in such cases "will depend on the facts of [the] individual cases." *Good Samaritan Hosp.*, 508 U.S. at 417 (internal citation omitted).

Audubon does not contend that Federal Defendants failed to consider the Kuchel Act altogether, or even that they failed to consider previous agency interpretations of the Kuchel Act; in fact, as Audubon readily points out, Federal Defendants considered the 1995 Solicitor's Opinion and its interpretation of the Kuchel Act during the review process and included the 1995 opinion in the record. Rather, Audubon contends these opinions interpret the Kuchel Act in a manner that designates waterfowl management as the "primary purpose" of the refuge lands at issue in this case and in a manner that provides the Secretary of the Interior with the authority to modify leasing rights in order to ensure consistency with waterfowl management and protection. Again, however, Audubon nowhere contends that the 1995 opinion's legal analysis breaks in significant ways from this conclusion and therefore that this legal conclusion is not already present in the record. Regardless, Audubon argues the opinions "will *help* . . . determine" whether a change in interpretation of the Kuchel Act has occurred. Audubon's Mot. Compel, at 14 (emphasis added).

The "relevant factors" exception "must be interpreted narrowly." *Delta Smelt*, 2010 WL 2520946, at *5 (internal citation omitted). Thus, "a plaintiff must establish more than just that the document is relevant," and "the document in question must do more than raise 'nuanced points' about a particular issue; it must point out an 'entirely new' general subject matter that the defendant agency failed to consider." *Pinnacle Armor*, 923 F. Supp. 2d at 1234 (quoting *Delta Smelt*, 2010 WL 2520946, at *5). Here, at best, all Audubon has shown is that these opinions,

which are non-legally binding interpretations of the act, provide a more nuanced, longitudinal understanding of Federal Defendants' responsibilities under the Kuchel Act, but it does not opine on an entirely new general subject matter previously unconsidered by decision-makers, since the Kuchel Act is discussed in the administrative record.

In response, Audubon contends that the agency's interpretation of the Kuchel Act over time and whether that interpretation has changed is an entirely new general subject matter, and it is unclear whether relevant decision-makers considered it. The court disagrees. In *Delta Smelt*, the court declined to supplement the record with a scientific article opining on the fact that a predatory fish inhabited the marsh-edge habitat at issue in the case and the impact the predatory fish had on juvenile endangered and threatened salmon who migrated through the habitat. 2010 WL 2520946, at *5. The court noted that the "relevant factors" exception "must be interpreted narrowly" and "only applies when Federal Defendants fail to consider a general subject matter that is demonstrably relevant to the outcome of the agency's decision, not when specific hypotheses and/or conclusions are omitted from consideration.'" *Id.* Yet, in that case, the agency had already considered the general subject matter of predation and nonnative species and the fact that the marsh-edge habitat supported predators; thus, the article merely "raise[d] nuanced points about predation," but it did not discuss a general subject matter omitted by the agency. *Id.*

The same is true here. As in *Delta Smelt*, there is no contention that Federal Defendants failed to consider the Kuchel Act and its legal ramifications, only that they these specific Solicitor's Opinions and their non-binding conclusions about the Kuchel Act are omitted from consideration. Thus, the opinions do not opine on a general subject matter not considered by decision-makers but, instead, at best, raise specific conclusions about the Kuchel Act not

previous considered. As the *Delta Smelt* court stated, the "relevant factors" exception does not apply in such instances.

Moreover, Audubon is unable to show that Federal Defendants did in fact fail to consider their interpretation of the Kuchel Act over time; instead, Audubon contends these opinions will aid the Court in determining whether that is in fact the case. Record supplementation requires clear evidence demonstrating that the existing administrative record is inadequate and will frustrate judicial review. *Pinnacle Armor*, 923 F. Supp. 2d at 1245 (internal citation omitted). A mere speculation, as is the case here, fails to meet that standard. Accordingly, Audubon has failed to provide clear evidence demonstrating that the existing administrative record is inadequate and will frustrate judicial review. Thus, its motion to supplement is denied.[3]

Nevertheless, the Court has expressly allowed the parties to concurrently file additional motions to supplement the record alongside dispositive motions. [ECF No. 37.] Consequently, if Audubon does discover clear evidence indicating Federal Defendants failed to consider a general subject matter that is discussed in the Solicitor's Opinions, it may renew its motion.

### III. TID's motion

As discussed, TID seeks to complete or supplement the record with a 1956 memorandum from the Commissioner of Reclamation to the Secretary of the Interior.[4] TID states that the memorandum addresses the Commissioner of Reclamation's "legal interpretation . . . of the two

---

[3] Audubon does not appear to contend, and indeed there is no evidence to suggest, that any of the remaining factors for supplementation are met in this case. As already discussed, there are no non-speculative grounds for the belief that documents considered by the agency were not included in the record. Moreover, there is no evidence of improper behavior of any kind, let alone that which would rise to the level of bad faith. *See Citizens to Preserve Overton Park*, 401 U.S. at 420, *abrogated on other grounds by Califano*, 430 U.S. at 105 (stating that in order to show bath faith "there must be a strong showing of . . . improper behavior"). Finally, there is no suggestion that technical terms or complex subject matter, which cannot be explained using the existing record, are at issue. Because none of the factors for supplementation are present, its motion necessarily fails.

[4] At oral argument, held on November 28, 2017, TID indicated that they sought only to supplement the record with the 1956 memorandum, acknowledging it was not part of the record. Out of an abundance of caution, however, the Court analyzes TID's request as being one to either complete or supplement the administrative record.

Page 14 – OPINION & ORDER

cession acts of the States of Oregon and California with respect to disposition of the lease lands for reclamation purposes." TID's Mot. to Compel, at 13. In addition, the memorandum also "memorializes the Commissioner of Reclamation's recommendation to open tens of thousands of acres of public lands in the Tule Lake, Lower Klamath Lake, and Upper Klamath Lake areas to homesteading and settlement." TID's Mot. to Compel, at 13-14. As such, TID maintains, the memorandum offers reclamation proponents' perspective on the legal effects of the dedication of the ceded lands and further informs the intent behind the Kuchel Act. They therefore ask that the Court complete or supplement the record by ordering production of this memorandum.

First, there is no evidence to suggest that, without this memorandum, the record is incomplete. As set forth above, in order to overcome the presumption that the administrative record is complete, a plaintiff "must identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record." *Pac. Shores Subdivision*, 448 F. Supp. 2d at 6 (internal citation omitted). Here, TID provides no evidence suggesting the agency considered the 1956 memorandum directly or indirectly. Accordingly, TID's request that the Court complete the record by ordering production of the memorandum must be denied.

The issue, then, is whether the memorandum should supplement the administrative record. TID contends supplementation "is appropriate under the 'relevant factors' exception." TID's Reply, at 3. Specifically, TID argues, "It is not apparent" that the relevant legal issue considered in the memorandum—the effect of the two cession acts—"was considered in the final [Plan]." TID's Reply, at 3. Nor, they argue, is it apparent that the memorandum's "supportive [perspective] of homesteading the lease lands . . . was considered in the final [Plan]." TID's Reply, at 3.

As articulated above, "to satisfy the 'relevant factors' exception, a plaintiff must establish more than just that the document is relevant." *Pinnacle Armor*, 923 F. Supp. 2d at 1234. And "the document in question must do more than raise 'nuanced points' about a particular issue; it must point out an 'entirely new' general subject matter that the defendant agency failed to consider." *Id.* (quoting *Delta Smelt*, 2010 WL 2520946, at *5). For instance, in *Pinnacle Armor*, where an agency revoked certification of the plaintiff's product, the court refused to supplement the record with four documents discussing the manufacture and construction of the product because there was no contention that the agency failed "to consider the general subject matter of 'manufacturing and construction,'" only that the agency "should have considered *this particular information* about manufacturing and construction." 923 F. Supp. 2d at 1234 (emphasis in original). This was so even though "[o]ne of the concerns raised by [the agency] about [the product] was the lack of detailed information on construction and manufacturing." *Id.*

Here, as in *Pinnacle Armor*, there is no contention that Federal Defendants failed to consider the intent behind the Kuchel Act or the two cession acts, nor that Federal Defendants failed altogether to generally consider perspectives supportive of reclamation concerns and the proper balance between reclamation/agricultural use and environmental preservation. In fact, TID cites to Federal Defendants' discussion of this general subject matter in the administrative record. *See* TID's Reply, at 3 (citing AR 4124). Instead, as in *Pinnacle Armor*, TID argues Federal Defendants should have considered this particular memorandum and its "perspective" of the intent behind the Kuchel Act and the balances between reclamation/agricultural use and environmental preservation. TID's Reply, at 3. This is, however, a misapplication of the "relevant factors" exception, which only applies to instances where the documents to be added to the record raise an entirely new general subject matter not already considered by the agency.

That is not the case here. Consequently, TID's request that the Court supplement the record by ordering production and inclusion of the memorandum based on the "relevant factors" exception must be denied.

Finally, TID argues that supplementation is "further justified in order to explain" the "complex historical events leading to the compromises embodied in the Kuchel Act[.]" TID's Reply, at 4. Hence, it argues the memorandum is admissible under the exception for evidence necessary to explain technical terms or complex subject matter.

TID does not explain why the existing record is insufficient to explain the complex historical events at issue in this case, nor do they attempt to explain the complex historical events and the important contributions that the 1956 memorandum purportedly provides. Instead, they conclusively state that complex historical events surrounding the Kuchel Act and the compromise that led to it necessitate supplementation. This is not the type of clear evidence necessary to demonstrate that the existing administrative record is inadequate and will frustrate judicial review, *Pinnacle Armor*, 923 F. Supp. 2d at 1245 (internal citation omitted), and such platitudes do not sufficiently convince the Court that the historical events relevant to this case cannot adequately be understood by means of the existing record. Therefore, in sum, TID has failed to overcome the presumption that the administrative record is complete, and its motion to supplement the record is denied. As discussed, however, the Court has expressly allowed the parties to concurrently file additional motions to supplement the record alongside dispositive motions. Thus, if TID discovers clear evidence indicating Federal Defendants failed to consider a general subject matter that is discussed in 1956 memorandum, it may renew its motion for supplementation.

///

## ORDER

Based on the foregoing, Audubon's and TID's motions to compel completion of the administrative record or, in the alternative, to compel supplementation of the administrative record (#58, #60) are DENIED with the right to renew their motions for supplementation, if necessary.

ORDERED and DATED this 12 day of December, 2017.

MARK D. CLARKE
United States Magistrate Judge