IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

AUDUBON SOCIETY OF
PORTLAND, an Oregon non-profit
Corporation; OREGON WILD, an
Oregon non-profit corporation; and
WATERWATCH OF OREGON, an
Oregon non-profit corporation,

             Plaintiffs,

v.

RYAN ZINKE, in his
official capacity as Secretary of
the Interior; GREG SHEEHAN, in his
official capacity as Acting Director of the
U.S. Fish and Wildlife Service; and
UNITED STATES FISH AND
WILDLIFE SERVICE, a federal
agency of the U.S. Department of
the Interior,

             Defendants,

TULELAKE IRRIGATION DISTRICT;
KLAMATH WATER USERS
ASSOCIATION; TULELAKE
GROWERS ASSOCIATION;
TALLY HO FARMS
PARTNERSHIP dba WALKER
BROTHERS; FOUR H ORGANICS,
LLC; and WOODHOUSE FARMING
AND SEED COMPANY,

             Intervenor-Defendants.

Case No. 1:17-cv-00069-CL (lead)
Case No. 1:17-cv-00098-CL (trailing)
Case No. 1:17-cv-00468-CL (trailing)
Case No. 1:17-cv-00531-CL (trailing)

OPINION & ORDER

CLARKE, Magistrate Judge.

The Secretary of the Interior and the U.S. Fish and Wildlife Service ("FWS") (collectively, "Federal Defendants") move the Court for an order directing Audubon Society of Portland, Oregon Wild, WaterWatch of Oregon, the Center for Biological Diversity, and Western Watersheds Project (collectively, "Plaintiffs") to return a document they contend was inadvertently disclosed and is subject to the attorney-client privilege (#86). Plaintiffs oppose this request, arguing the document is not privileged or, in the alternative, that Federal Defendants have waived any privilege. For the reasons below, Federal Defendants' motion is denied.

## BACKGROUND

Plaintiffs challenge the Record of Decision, Final Comprehensive Conservation Plan, and Final Environmental Impact Statement (collectively, the "Plan") prepared by Federal Defendants. Plaintiffs allege, *inter alia*, that Federal Defendants misinterpreted the Kuchel Act, a federal statutory scheme that seeks to manage Lower Klamath, Upper Klamath, Tule Lake, and Clear Lake National Wildlife Refuges. The act seeks "to preserve intact the necessary existing habitat for migratory waterfowl," while at the same time considering "optimum agricultural use that is consistent" with "the major purpose of waterfowl management[.]" 16 U.S.C. §§ 695*k-l*.

On May 31, 2017, Federal Defendants first lodged the administrative record. The parties subsequently worked privately to address concerns regarding the administrative record's completeness. This led Federal Defendants to file a Corrected Administrative Record on September 11, 2017, but disputes remained. Finally, on January 11, 2018, Federal Defendants lodged the Second Corrected Administrative Record [CM/ECF No. 82.]. Both in this iteration of the administrative record, as well as in the two previously filed, Federal Defendants submitted the document bates numbered AR 050198. On March 9, 2017, FWS also disclosed AR 050198

without redaction in response to a Freedom of Information Act ("FOIA") request.[1] AR 050198 is part of a seventy-page draft of the document titled "The Kuchel Act and Management of Lower Klamath and Tule Lake National Wildlife Refuges," the final version of which is found in Appendix M of the administrative record. The final draft of this document was incorporated into Federal Defendants' Plan, and part of its purpose was to "articulate [FWS's] interpretation of the Kuchel Act in a manner consistent with the Act's language and Congress' intent[.]" AR 015241.

Because it is a draft, AR 050198 contains comments in the margins. And comment "TM25" contains a statement from Tim Mayer, a FWS supervisory hydrologist, rehashing an interpretation of the Kuchel Act provided to him by Solicitor's Office attorneys Steve Palmer and Barbara Scott-Brier. As mentioned, AR 050198 is part of a seventy-page draft document submitted to Solicitor's Office attorneys for comment. As Federal Defendants point out, "This seventy-page document contained eight comments in track changes that were properly redacted on account of containing attorney-client privileged information, and was accordingly placed on the privilege log that was filed with the Court." Fed. Defs.' Mot., at 2-3. AR 050198 was included in Federal Defendants' privilege log; however, unlike the eight comments mentioned above, comment TM25 was included without redaction in all three versions of the administrative record, as well as in response to the FOIA request.

Federal Defendants maintain that these disclosures were inadvertent; in fact, they note that they were unaware of the disclosure until an attorney for Plaintiffs notified them of the potential inadvertent disclosure. And, Federal Defendants state, they immediately moved to rectify the error and notified Plaintiffs of their intent to file a motion to compel return of the document.

---

[1] Federal Defendants state they have or will be sending a letter to the recipient of the documents released in response to the FOIA request notifying them that AR 050198 was inadvertently released, is exempt from release, and that it be recognized as such.

Page 3 – OPINION & ORDER

In their motion, Federal Defendants contend that Mr. Mayer's inadvertently disclosed comment is protected by the attorney-client privilege and that, despite the disclosure, this privilege has not been waived. Accordingly, Federal Defendants ask the Court to order the document returned pursuant to Fed. R. Evid. 502(b); they further request that the Court allow them to replace the inadvertently disclosed version with a redacted version, excluding the attorney-client-protected material—namely, the last paragraph of comment TM25.

Plaintiffs advance numerous arguments in response. Specifically, they maintain that (1) nothing contained within AR 050198 is privileged attorney-client communications; (2) Federal Defendants waived the attorney-client privilege by disclosing the document in response to a FOIA request; (3) Federal Defendants have failed to carry their burden to demonstrate the disclosure was inadvertent, as they disclosed it on multiple occasions; (4) Federal Defendants did not take reasonable steps to prevent disclosure; (5) Federal Defendants unduly delayed in rectifying the error; (6) Federal Defendants' proposed redaction is too broad and seeks to redact unprivileged information; and (7) Federal Defendants waived any privilege because they voluntarily and intentionally disclosed other, related attorney-client communications and the comment at issue here should in fairness be considered together with the voluntarily disclosed communications.

## DISCUSSION

### I. Whether comment TM25 is protected by the attorney-client privilege

As discussed, Federal Defendants argue comment TM25 is protected from disclosure pursuant to the attorney-client privilege. Plaintiffs maintain, however, that Federal Defendants have failed to carry their burden of establishing that each element of the privilege applies to the

comment. In particular, Plaintiffs aver that Federal Defendants have not shown the comment was made in confidence.

The Court finds that an attorney-client relationship exists but that Federal Defendants have failed to demonstrate the communication at issue was made in confidence. "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (internal citation omitted). The important justification for its existence "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* "Because it impedes the full and free discovery of the truth," however, "the attorney-client privilege is strictly construed," and "[t]he party asserting the privilege bears the burden of proving each essential element." *United States v. Ruehle*, 583 F.3d 600, 607-08 (9th Cir. 2009) (internal quotation and citation omitted). In determining whether information is covered by the attorney-client privilege, the Ninth Circuit employs an eight-part test:

> "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived."

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (quoting *Ruehle*, 583 F.3d at 607).

"Courts have applied [the attorney-client privilege] to communications between government agencies and their counsel." *Ariz. Rehab. Hosp., Inc. v. Shalala*, 185 F.R.D. 263, 269 (D. Ariz. 1998). For instance, in *Cobell v. Norton*, 377 F. Supp. 2d 4, 9 (D.D.C. 2005), the court noted that the Solicitor's Office, as the Department of Interior's general counsel, was in an attorney-client relationship with "Interior's bureaus, divisions, offices, officials, and employees."

Here, too, the Solicitor's Office acted as Federal Defendants' general counsel and therefore established an attorney-client relationship with Federal Defendants' bureaus, divisions, offices, officials, and employees, which would, of course, include Mr. Mayer, who was employed as a FWS supervisory hydrologist. Consequently, an attorney-client relationship existed.

Federal Defendants have, however, failed to demonstrate that "'confidentiality was expected in'" making the comment at issue. *Ariz. Rehab. Hosp.*, 185 F.R.D. at 269 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.D.C. 1980)). Rather, they conclusively state that, because the "disclosed comment contains an FWS's employee's recitation of advice provided to him by Solicitor's Office attorneys," and, because the "document was provided to Solicitor's Office attorneys for comment[,]" it necessarily "qualifies for the privilege on its face." Fed. Defs.' Mot., at 4-5. But "'[t]he privilege does not allow an agency to withhold a document merely because it is a communication between the agency and its lawyers.'" *Nat'l Res. Def. Council v. U.S. Dep't of Def.*, 388 F. Supp. 2d 1086, 1099 (C.D. Cal. 2005) (quoting *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 267 (D.D.C. 2004)). Instead, "'the agency must show that it supplied information to its lawyers with the expectation of secrecy and was not known by or disclosed to any third party.'" *Id.* (internal quotation and citation omitted). Federal Defendants nowhere demonstrate an expectation of secrecy; and, in fact, Mr. Mayer indicates in the comment that the Kuchel Act interpretation provided to him by the Solicitor's Office attorneys "is a major point" and "it would seem like this needs to be mentioned" in the document itself, a document which, in its final form, composed part of the agencies' Plan and was made available to the public as such. *See* App. M.

It is Federal Defendants' burden to demonstrate an expectation of confidentiality, and simply "'identify[ing] th[e] document[] as attorney-client communications,'" as they have done

here, is insufficient. *Nat'l Res. Def. Council*, 388 F. Supp. 2d at 1104 (quoting *Judicial Watch*, 297 F. Supp. 2d at 267). Therefore, Federal Defendants have not carried their burden in demonstrating that the comment at issue is protected by the attorney-client privilege.

## II. Whether waiver has occurred

Moreover, even if the Court were to assume the attorney-client privilege applies, and therefore that an expectation of confidentiality was present, the Court nonetheless finds Federal Defendants have waived the right to assert the privilege because (1) Federal Defendants failed to satisfy their burden to demonstrate the disclosure was inadvertent and that they took reasonable steps to prevent disclosure, and (2) Federal Defendants have selectively and voluntarily disclosed communications to Plaintiffs involving the same subject matter.

### A. Whether disclosure was inadvertent and whether reasonable steps were taken to prevent disclosure

First, the Court finds Federal Defendants failed to carry their burden to show that the disclosure of comment TM25 was inadvertent and that they took reasonable steps to prevent the disclosure of privileged material. Under Fed. R. Evid. 502(b), the disclosure of attorney-client-privileged material does not waive the privilege, so long as (1) the disclosure is inadvertent, (2) the privilege-holder took reasonable steps to prevent the disclosure, and (3) the privilege-holder promptly took reasonable steps to correct the error. The disclosing party has the burden of proving the elements of Rule 502(b) have been met. *Multiquip, Inc. v. Water Mgmt. Sys. LLC*, No. CV 08-403-S-EJL-REB, 2009 WL 4261214, at *3 (D. Idaho Nov. 23, 2009) (citing *Relion, Inc. v. Hydra Fuel Cell Corp.*, No. CV06-607-HU, 2008 WL 5122828, at *2 (D. Or. Dec. 4, 2008)).

"[W]hether disclosure is inadvertent and whether the holder of the privilege took reasonable steps turns on a variety of factors, including the number of documents and how they were reviewed prior to production." *Comrie v. Ipsco, Inc.*, No. 08 C 3060, 2009 WL 4403364, at *2 (N.D. Ill. Nov. 30, 2009). The party alleging the privilege "must offer specific facts and details to show that the procedures were reasonable." *Excel Golf Prods., Inc. v. MacNeill Eng'g Co., Inc.*, No. 11 C 1928, 2012 WL 1570772, at *3 (N.D. Ill. May 3, 2012) (citing *Kmart Corp v. Footstar, Inc.*, No. 09 C 3607, 2010 WL 4512337, at *4 (N.D. Ill. Nov. 2, 2010)).

Here, Federal Defendants note that the sheer size of the administrative record—over 120,000 pages—caused the inadvertent disclosure of the comment at issue, "despite [their] best efforts[.]" Fed. Defs.' Mot., at 6. As stated, the number of documents is a factor the court must consider; in fact, Rule 502's Advisory Committee Notes expressly say courts should take into account "the number of documents to be reviewed." And the Court is sympathetic to the sheer size of the record in this case; however, the fact that Federal Defendants disclosed the comment at issue in three separate iterations of the record and in a FOIA request lessens the weight given to this factor. *See, e.g., Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 512 (Fed. Cl. 2009) (noting that "[b]ecause defendant disclosed the message to plaintiff more than once, and via more than one mechanism"—from both a FOIA request and through its environmental investigation—"the court concludes that defendant's disclosure was so careless that it cannot be construed as inadvertent").

Moreover, in addition to disclosing comment TM25 on more than one occasion, Federal Defendants have failed to offer the specific facts and details necessary to sufficiently show they took reasonable steps to prevent disclosure in the first place. In cases that have found the privilege-holder took reasonable steps, the privilege-holder supported their contention with a

specific description of their measures to protect against inadvertent disclosure and often buttressed their description with supporting affidavits or declarations. For instance, in *Datel Holdings Ltd. v. Microsoft Corp.*, No. C-09-05535 EDL, 2011 WL 866993, at *4 (N.D. Cal. Mar. 11, 2011), the defendant, through a supporting declaration, explained that it used a team of attorneys to screen documents, that a quality-control team then reviewed those documents marked as potentially privileged, the quality-control team reviewed any designated documents a second time, and then the privileged documents were entered into a privilege log. The supporting declaration further explained that "[r]eviewing attorneys had specific instructions on how to identify documents that contain attorney-client communications or work product" and "Defendant's litigation counsel conducted a tutorial for the reviewers." *Id.* Finally, "[f]rom time to time, Defendant's litigation counsel also conducted its own quality control checks." *Id.*; *see also Kelly v. CSE Safeguard Ins. Co.*, No. 2:08-cv-88-KJD-RJJ, 2011 WL 3494235, at *2 (D. Nev. Aug. 10, 2011) (supporting the defendant's contention that it took reasonable steps to prevent disclosure with an affidavit explaining its procedures).

By contrast, in those cases where the court found a failure to show reasonable steps, the party seeking protection failed to support their assertion that they took reasonable steps with specific facts and/or failed to supply the court with affidavits or declarations explaining their review process. In *Comrie*, for instance, the court held that the defendants failed to support their contention that they took adequate steps to prevent disclosure. 2009 WL 4403364, at *2. There, the defendants merely pointed to a protective order, which provided "a method for marking documents[.]" *Id.* But the defendants did "not detail the procedures or methods for reviewing" documents and, "with the exception of stating the number of documents produced," failed "to support th[eir] assertion with facts." *Id.*

Likewise, in *Williams v. District of Columbia*, 806 F. Supp. 2d 44, 46 (D.D.C. 2011), the defendant maintained that the disclosure of a privileged e-mail communication was inadvertent. In finding that the defendant had failed to show that it took reasonable steps to prevent disclosure, the court noted that the defendant "relie[d] exclusively on the unsworn averments of its counsel" and "failed to support its arguments with an affidavit or declaration from its prior counsel or the paralegal who is claimed to have reviewed the documents." *Id.* at 49. Most important, the court noted, the defendant "utterly failed to explain its 'methodology' for review and production." *Id.* (internal citation omitted). "The general statement that a privilege review was performed, without supporting details," the court explained, "is completely uninformative." *Id.* at 50.

Here, Federal Defendants have not supported their contention that they took reasonable steps to prevent disclosure with sufficient factual detail. In arguing they took reasonable steps, Federal Defendants state only that "[t]he materials were reviewed by a Solicitor's Office attorney for determination of privilege and were subsequently redacted. These documents that were either determined to be privileged or containing privileged information where then disclosed on a privilege log." Fed. Defs.' Mot., at 6. Here, as in *Williams*, and unlike in *Datel Holdings*, Federal Defendants rely exclusively on their attorney's "unsworn averments." They do not support their argument with any type of sworn statements that detail their methods for reviewing documents.

In response to this point, Federal Defendants note that the reviewing attorney is no longer employed with the government and could not be located. But, while the Court is sympathetic to this hurdle, even absent any sworn statements, Federal Defendants' explanation of their review is far too conclusory. Indeed, aside from stating that a Solicitor's Office attorney reviewed the material at issue, there is no explanation as to the procedures used to identify or determine

whether a document was privileged; in fact, at oral argument, Federal Defendants' counsel acknowledged that, because the reviewing attorney is no longer employed with the government, counsel could not be sure why certain documents and been disclosed and others redacted or withheld.

In addition to a lack of knowledge as to how documents were identified or deemed privileged, Federal Defendants also do not indicate when the review occurred; how much time they allocated to the review process; the reviewing attorney's experience; any sort of record management system used; or other details of their review process. *See Williams*, 806 F. Supp. 2d at 50 ("In this case, the District does not indicate when its review occurred, how much time it allocated to the review of documents, the nature of the reviewer's experience, . . . and other basic details of the review process"); *see also Footstar*, 2010 WL 4512337, at *4-*5 (detailing factors the court considers in assessing whether a party took reasonable steps to prevent disclosure).

Therefore, in addition to lacking any type of sworn statement from the reviewing attorney explaining the review process, Federal Defendants' explanation of the review process lacks sufficient supporting detail, and the Court thus finds Federal Defendants have not met their burden to demonstrate the steps taken to prevent disclosure were reasonable.

### a. Whether Federal Defendants took reasonable steps to rectify their disclosure

Finally, for purposes of a full analysis, the Court considers the third step of the 502(b) analysis—whether Federal Defendants took reasonable steps to rectify the disclosure. "[C]ourts have emphasized that claw back requests should be made immediately[.]" *Skansgaard v. Bank of Am., N.A.*, C11-0988 RJB, 2013 WL 828210, at *3 (W.D. Wash. Mar 6, 2013). Here, Federal Defendants asserted attorney-client privilege over the comment at issue within two weeks and

filed this present motion within thirty-five days of initially being made aware of the disclosure. This timeframe stands in contrast with the seven-week delay deemed too long in *Mycone Dental Supply Co. Inc. v. Creative Nail Design Inc.*, No. C-12-00747-RS, 2013 WL 4758053, at *3 N.D. Cal. Sept. 4, 2013). Moreover, it is evident from the e-mail chain, which was attached as an exhibit to Federal Defendants' motion, that part of the delay occurred because counsel for Federal Defendants had reached out to, and were waiting for replies from, the numerous attorneys involved in this matter as to whether they opposed Federal Defendants' request to replace AR 050198 with a redacted version. Federal Defendants will not be punished for attempting to first resolve this matter without Court involvement. The Court finds, therefore, that Federal Defendants took reasonable steps to rectify their error.

Nevertheless, considering all the factors together—namely, Federal Defendants' multiple disclosures of the comment at issue, as well as Federal Defendants' failure to provide specific facts and details regarding steps taken to prevent disclosure—the Court concludes Federal Defendants have failed to prove that the elements of Rule 502(b) have been met. Because they have not met the requirements of Rule 502(b), they are not entitled to its protection. *See Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, No. 06-cv-2804 BTM (WMc), 2010 WL 275083, at *4 (S.D. Cal. Jan. 13, 2010) (explaining that disclosure of a privileged document normally constitutes a waiver unless the elements of Rule 502(b) are satisfied).

## B. Whether Federal Defendants have voluntarily produced privileged material concerning the same subject matter

Last, the Court finds that Federal Defendants have voluntarily disclosed privileged information addressing the same subject matter as the comment at issue, thus waiving the attorney-client privilege as it pertains to comment TM25. Fed. R. Evid. 502(a) applies to the

"disclosure of a communication or information covered by the attorney-client privilege or work-product protection." The rule provides that when a disclosure "waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information . . . only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." *Id.*

Simply put, then, in order for a plaintiff to succeed on a claim that a defendant has effected a subject matter waiver of attorney-client privilege under Rule 502(a), it must demonstrate that (1) the waiver was intentional; (2) the communication the plaintiff seeks disclosed concerns the same subject matter; and (3) fairness necessitates its disclosure. With regard to fairness, the advisory committee's notes explain that the rule "is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." *See* Fed. R. Evid. 502(a) Advisory Committee Notes.

Here, Plaintiffs maintain that "Federal Defendants voluntarily and intentionally disclosed attorney client communications containing legal advice . . . concern[ing] the same subject matter"—the legal interpretation of the Kuchel Act—as comment TM25. Ctr. for Biological Diversity's Opp. to Fed. Defs.' Mot., at 3-4. Plaintiffs further opine that fairness mandates comment TM25 be considered together with the information Federal Defendants have voluntarily disclosed because the voluntarily disclosed information is a selectively "sanitized" version of the Kuchel Act that cherry-picks legal interpretations favorable to Federal Defendants while excluding those that are unfavorable. Ctr. for Biological Diversity's Opp. to Fed. Defs.' Mot., at 4.

First, the Court finds Federal Defendants voluntarily disclosed privileged information. At oral argument on March 21, 2018, Federal Defendants acknowledged the disclosure of attorney mental impressions and communications regarding the scope and breadth of the Kuchel Act. Specifically, Federal Defendants were asked about Solicitor's Office Attorney Barbara Scott-Brier's statement at AR 050170, wherein Ms. Scott-Brier directly opines—in the same draft document as comment TM25 appears—on the balance the Kuchel Act affords between waterfowl management and agricultural leasing. Counsel did not directly challenge the voluntariness of this disclosure or that it is privileged[2]; however, counsel stated that, because the reviewing attorney is no longer employed with the government, counsel could not be sure why Ms. Scott-Brier's mental impressions had been disclosed and not redacted. Nevertheless, counsel conceded the statement's existence and that it remains in the record. Because Ms. Scott-Brier's statement knowingly remains in the record, the Court finds the disclosure voluntary. *See Century Aluminum Co. v. AGCS Marine Ins. Co.*, 285 F.R.D. 468, 472 (N.D. Cal. 2012) ("The Court finds that AGCS' counsel made the knowing decision to produce the subject document" and therefore "that disclosure . . . was not inadvertent").

Next, like Ms. Scott-Brier's voluntarily disclosed impressions, comment TM25 involves the same subject matter—namely, Solicitor's Office attorneys' legal interpretation of the Kuchel Act's balance between farming and waterfowl management.[3] In fact, the only difference between the comment Federal Defendants voluntarily disclosed and the one they now seek protected—comment TM25—is that the legal interpretation discussed in comment TM25 could potentially

---

[2]Indeed, if the Court accepts as true Federal Defendants' earlier argument that comment TM25 is privileged on its face, the same conclusion must be reached here: Ms. Scott-Brier's statement, like TM 25, is an agency attorney's legal interpretation of the Kuchel Act provided as part of the same draft document within or between the agencies involved.

[3]One of the attorneys referenced in comment TM25 is indeed Barbara Scott-Brier.

be interpreted as being more deferential to waterfowl management at the expense of farming/agricultural leasing.

Fairness thus dictates comment TM25's disclosure. Indeed, while the Court respects and understands the importance of the attorney-client privilege, Federal Defendants cannot use the privilege as "both a shield and a sword," selectively disclosing only those "limited aspect[s] of privileged communications" that may be most in line with their ultimate interpretation of the Kuchel Act, thereby providing them "a tactical advantage in litigation." *Century Aluminum*, 285 F.R.D. at 472. Rather, "by voluntarily producing a privileged document concerning" the same subject matter, Federal Defendants have waived the attorney-client privilege as to comment TM25. *Id.*

## ORDER

Having found that the attorney-client privilege does not apply and, even if it did, that Federal Defendants have waived their right to seek its protection, Federal Defendants' motion for an order directing the return of an inadvertently disclosed document (#86) is hereby DENIED.

ORDERED and DATED this 27 day of March, 2018.

MARK D. CLARKE
United States Magistrate Judge